GUILD EQUITIES, INC. *v.* EARLE HARRIS

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 1-6312-4630

Argued September 28, 1964—decided January 14, 1965

*Robert E. Connolley,* of Greenwich, for the appellant (defendant).

*James F. Bingham,* of Stamford, for the appellee (plaintiff).

KOSICKI, J. The plaintiff brought suit to recover on a promissory note, in the face amount of $2000, made by the defendant, a resident of Connecticut, to the plaintiff, a corporation existing and doing business under the laws of the state of New York. On April 3, 1964, the plaintiff filed an amended com-

plaint to which, on April 23, the defendant filed an answer consisting of a general denial, special defenses and a counterclaim. In the counterclaim the defendant alleged among other things that the plaintiff's agent and employee, while seeking to collect on the note, had maliciously entered upon a course of vilification, threats and insults, over the telephone and in the presence of others, thereby subjecting the defendant to embarrassment and ridicule and causing him mental pain, anguish and humiliation. The ad damnum was for $100,000. On May 7, the plaintiff filed a motion to expunge the counterclaim, alleging that it was irrelevant, immaterial and sham. In granting the motion, the court filed no memorandum of decision.

In his assignment of errors, the defendant claims that the court erred (1) in entertaining the motion to expunge the counterclaim; (2) in failing to transfer the case to the Superior Court upon the timely filing of the counterclaim; (3) in granting the motion to expunge the counterclaim; (4) in ruling that the counterclaim does not arise out of the same transaction or transactions connected with the same subject of action as that alleged in the complaint and is therefore not pleadable; (5) in ruling that a counterclaim in tort may not be pleaded in an action on contract, whether arising out of the same transaction or not; and (6) in permitting a foreign corporation not qualified to do business in this state to sue a resident of this state without subjecting itself to a counterclaim by such resident regardless of the nature or source of the same.

The last three assignments appear to be deductions from the action taken by the court viewed from the standpoint of the legal courses of action open to it. There is no finding, and we may only assume

that the arguments of counsel, as set down in their trial briefs, were considered carefully by the court and that the claims of the defendant were overruled as to any one or all of the grounds advanced. The defendant now maintains that the trial court was without power to entertain the motion because the damages demanded in the counterclaim were in excess of the amount within the jurisdiction of the Circuit Court and that immediate transfer to the Superior Court was mandatory. This claim of law was not raised in the trial court but, since it is jurisdictional in nature, we shall consider it. Transfer of actions in which, by amendment of the complaint or by counterclaim, the relief sought exceeds the jurisdiction of the Circuit Court or the Court of Common Pleas is provided for in § 52-133 of the General Statutes, of which the pertinent provisions are quoted in the footnote.[1] We need not pass on the question whether the filing of the counterclaim

---

[1] "Sec. 52-133. RELIEF BEYOND JURISDICTION. TRANSFER OF ACTION. If in any action pending before the circuit court or the court of common pleas the plaintiff desires to amend the complaint to seek relief exceeding the jurisdiction of the court or if in any such action the defendant desires to file an answer, cross-complaint or counterclaim claiming judgment in his favor exceeding such jurisdiction, such plaintiff or such defendant, as the case may be, if the time within which such pleading might be filed has expired, may make a motion to the court in which the action is pending for permission to file such amendment, answer, cross-complaint or counterclaim. Such court may permit the filing of the amendment, answer, cross-complaint or counterclaim and, if such permission is granted, or if such pleading has been filed within the time fixed for the filing of such pleading, shall order the transfer of the action to the court of common pleas or the superior court, whichever has jurisdiction of the subject matter embodied in the amended complaint or in the answer, cross-complaint or counterclaim, in the judicial district or county in which the court before which it was brought is located. . . . If the party on whose motion the action was transferred does not recover final judgment for a greater sum than that which might have been awarded him in the court from which such action was removed, he shall not be entitled to costs, and, if final judgment is rendered against him, he shall be subjected to double costs."

required the trial court of its own motion to order the transfer or whether the filing of a motion for transfer, as implied in the last sentence of the statute, rested with the defendant. As pointed out by the plaintiff, the defendant had failed to conform to the express condition laid down by the statute in order for the counterclaim to qualify as a pleading de jure. The time for filing it had expired; Practice Book § 76, and the defendant had not requested nor obtained the permission of the court to file the counterclaim. That alone would constitute sufficient reason for expunging the purported counterclaim from the record. Practice Book § 100.

The parties, however, both in the trial court and on appeal, have addressed themselves mainly to the fourth and fifth assignments of error, which embrace the question whether the counterclaim was proper in this case. The plaintiff's action is in contract. The defendant's counterclaim, whether grounded on a claim for damages for the invasion of privacy or for slander or both, sounds in tort. The basic issue is whether the counterclaim is allowable under § 52-96, governing the pleading of counterclaim and setoff, and § 52-97 (7), permitting the union of causes of action, whether in the complaint or by way of counterclaim or setoff, "upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action." The provisions of § 52-97 are recapitulated as a rule in Practice Book § 86(1). In § 86(2), transactions connected with the same subject of action within the meaning of subdivision (7) of § 86(1) are defined as "any transactions which grew out of the subject matter in regard to which the controversy has arisen; as, for instance, the failure of a bailee to use the goods bailed for the purpose agreed, also an injury to them by his fault or neglect; the breach of a covenant for quiet

enjoyment by the entry of the lessor, also a trespass to goods, committed in the course of the entry."

"The crucial issue is whether the subject matter of the counterclaim is so connected with the matter in controversy under the original complaint [that is, the suit on the note] that its consideration is necessary for a full determination of the rights of the parties." *Springfield-Dewitt Gardens, Inc.* v. *Wood,* 143 Conn. 708, 713; *Schaefer* v. *O. K. Tool Co.,* 110 Conn. 528, 530. The subject matter of the counterclaim clearly had no existence at the time the original cause of action arose. What existence it had may have been coincidental or contemporaneous with the pursuit of the plaintiff's remedies in the enforcement of its rights; it was not so connected, however, with the matter in controversy under the complaint as to make its consideration necessary for a full determination of the rights of the parties. In the *Schaefer* case, supra, the matter in controversy under the complaint was an alleged contract of employment of the plaintiff by the defendant and the rendering of service thereunder. The subject matter of the counterclaim was the bringing of an alleged vexatious suit by the plaintiff against the defendant while the present action was pending. The court, in holding that the counterclaim should have been stricken, said (p. 531): "It [the counterclaim] has nothing to do with the contract sued upon. The cause of action alleged in the counterclaim arose from facts subsequent to and independent of those on which the plaintiff's cause of action rests."

The tort alleged in the counterclaim in this case constituted an independent tort. It did not arise out of the promissory note set out in the complaint, nor was it connected with the subject of the action. See note, 68 A.L.R. 451, 458, and collected cases. The

ruling of the court in expunging the counterclaim was correct. In view of this opinion, consideration of the sixth assignment of error becomes unnecessary.

There is no error.

In this opinion PRUYN and LEVINE, Js., concurred.